UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────

No. 08 Civ. 5454 (RJS)

───────────────

VERA CRAWFORD-BEY,

Plaintiff,

VERSUS

THE NEW YORK AND PRESBYTERIAN HOSPITAL,

Defendant.

───────────────

MEMORANDUM AND ORDER
September 30, 2011

───────────────

RICHARD J. SULLIVAN, District Judge:

Plaintiff Vera Crawford-Bey, proceeding *pro se*, brings this action against her former employer pursuant to federal, state, and local civil rights laws, alleging employment discrimination, retaliation, and creation of a hostile work environment based on her age, race, and disability.

Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

I. BACKGROUND

A. Facts

Plaintiff is a 57-year-old African-American woman who purportedly suffers from claustrophobia.[1] From June 2004 until January 2007, Plaintiff worked as a nurse

---

[1] The facts are taken from Defendant's Local Rule 56.1 statement as well as the declarations and exhibits attached thereto. Because Plaintiff failed to submit her own 56.1 statement, despite specific prompting from the Court, the facts set forth in Defendant's 56.1 statement ("Def. 56.1") are deemed admitted. *See* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *see also Gitlow v. United States*, 319 F. Supp. 2d 478, 480 (S.D.N.Y. 2004) (*pro se* litigant's failure to submit a Rule 56.1 statement resulted in his adversary's statement being taken as true). References to the parties' submissions are as follows: Defendant's memorandum of law in support of its motion for summary judgment ("Def. Mem."); Plaintiff's brief in support of her cross-motion for summary judgment and in opposition to Defendant's motion ("Pl. Mem."); Defendant's reply

coordinator in the transplant division of Defendant New York and Presbyterian Hospital (the "Hospital" or "Defendant"). (Def. 56.1 ¶¶ 4, 7, 23.) At the time she was hired, Plaintiff did not inform the Hospital of any medical condition that might limit her employment or require accommodations. (*Id.* ¶ 6.)

Plaintiff was initially supervised by Mary Jane Samuels, the Hospital's post-transplant supervisor, and Joan Kelly, the manager of the Hospital's transplant division. (*Id.* ¶ 7.) On December 15, 2004, Plaintiff received her "Probationary Period of Employment Evaluation" from Kelly, who rated Plaintiff's overall competency as "Needs Improvement." (*Id.* ¶¶ 10-11.) Kelly noted several concerns about Plaintiff's performance, including her "issues with the responsibilities of being a full time employee," her "need[] to improve her record keeping and to seek out answers if confronted with an unknown task," and her lack of punctuality in coming to work and returning from breaks. (Decl. of Kevin Brady, dated October 28, 2010, Doc. No. 64 ("Brady Decl."), Ex. 8.) Despite these concerns, the Hospital decided to extend Plaintiff's probationary period for two months, "in hopes that her job performance will improve." (*Id.*)

Over the next year, Plaintiff continued to struggle with punctuality. Between August 11, 2005 and October 11, 2005, Plaintiff was late to work thirty times. (Def. 56.1 ¶ 13.) On January 11, 2006, Plaintiff received her performance review for 2005. (*Id.* ¶ 14.) In the review, Kelly noted that Plaintiff had made "definite improvement" overall, but set Plaintiff's goal for the coming year as "continu[ing] to maintain punctuality and return to work after vacation and paid time off." (Brady Decl., Ex. 8 at D003-11.)

In early 2006, the Hospital hired Diego Arias as a manager of transplant operations, and he became Plaintiff's supervisor. (Def. 56.1 ¶ 16.) On June 30, 2006, Arias issued Plaintiff a "Corrective Action Form," which noted that Plaintiff arrived late to work nine times in June 2006. (*Id.* ¶ 17.) Arias further noted that Plaintiff had received verbal warnings in 2005 with respect to her lateness and instructed her that she must "[s]how up to work on time!" (Brady Decl., Ex. 10 at D161.)

On November 6, 2006, Arias issued a second written warning to Plaintiff for "excessive lateness to work." (*Id.* at D020.) Arias noted that, since their meeting on June 30, 2006, Plaintiff had been late to work eighteen times. (*Id.*) Arias further instructed Plaintiff that "lateness to work must improve immediately or employment could be [a]ffected." (*Id.*)

On December 4, 2006, Arias issued a third written warning to Plaintiff. (*Id.* at D014-D016.) In the warning, Arias identified four issues with Plaintiff's job performance and provided a corresponding corrective action plan. (*Id.*) Specifically, Arias highlighted Plaintiff's failure to: (i) timely report to work three times after being issued her second written warning regarding punctuality; (ii) verify patient medication information and accurately record it in the patient's chart; (iii) return to work after completing a training meeting and to notify a supervisor that she was leaving work; and (iv) create a pharmacy binder to accurately monitor and track all pharmacy requests. (*Id.*)

On January 5, 2007, Plaintiff's employment was terminated due to her

---

memorandum ("Def. Reply"); Plaintiff's reply memorandum ("Pl. Reply").

chronic lateness. (Def. 56.1 ¶ 23.) On September 7, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Brady Decl., Ex. 13.) On March 10, 2008, the EEOC sent Plaintiff a letter stating that "the Commission has determined that the facts alleged in your case are not sufficient to continue this investigation," and informing Plaintiff of her right to bring suit within 90 days. (Def. 56.1 ¶ 26.) The letter further noted that,

> although you allege that you were discriminated against because of your race, color, religion, age, disability, other (culture) and retaliation, you failed to provide any evidence to suggest that Respondent's employment actions were based on any of the above. Also, the record shows that you were terminated for cause. Therefore, the Commission will take no further action in this matter.

(*Id.*)

Plaintiff filed her complaint in this Court on June 17, 2008, alleging employment discrimination, retaliation, and creation of a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").[2] (Doc. No. 1.) On October 28, 2010, Defendant moved for summary judgment against Plaintiff. (Doc. No. 62.) In addition to its moving papers, Defendant served Plaintiff with a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," as required by Local Rule 56.2. (Doc. No. 66.) The notice advised Plaintiff of her obligations in responding to a summary judgment motion, including the need to file a 56.1 statement. (*Id.*) On November 30, 2010, Plaintiff filed papers purporting to be a cross-motion for summary judgment. However, Plaintiff's filing was rejected because it lacked: (i) a 56.1 Statement in support of Plaintiff's motion; (ii) an opposition to Defendant's 56.1 Statement; (iii) an original signature; and (iv) an affirmation of service. On December 6, 2010, the Court ordered Plaintiff to submit revised motion papers by December 17, 2010. (Doc. No. 68.) The Court advised Plaintiff that "failure to make these corrections will result in the Court accepting as true all admissible facts set forth in Defendant's Local Rule 56.1 Statement." (*Id.*) On December 21, 2010, Plaintiff submitted revised motion papers, but again failed to submit a 56.1 Statement. The motions were fully submitted as of January 23, 2011.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh evidence but is instead

---

[2] Defendant argues that Plaintiff's complaint is time barred because it was filed more than 90 days after Plaintiff received the EEOC's right-to-sue letter. (Def.'s Mem. at 1.) However, because there is a dispute as to when Plaintiff actually received the letter, the Court will consider the merits of her claims.

required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *accord Anderson*, 477 U.S. at 248. As such, "if there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

"[B]ecause direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence," courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in cases involving allegations of employment discrimination. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). However, even in an employment discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate test remains "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Because Plaintiff appears *pro se* in this matter, the Court construes her submissions liberally and interprets them "to raise the strongest arguments [that they] suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).

III. DISCUSSION

A. Race and Age Discrimination

As noted above, Plaintiff alleges that she was discriminated against on the basis of her race and age in violation of Title VII, the ADEA, the NYSHRL, and the NYCHRL.[3] Because Plaintiff has not presented any direct evidence of discriminatory animus,[4] the Court will review Plaintiff's various discrimination claims under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[5]

In the first step of this framework, the employee bears the burden of setting forth evidence sufficient to support a *prima facie*

---

[3] In her motion papers, Plaintiff also references alleged discrimination on the basis of religion. Plaintiff's complaint, however, does not advance a claim for religious discrimination. (*See* Compl. at 4.) While it appears that Plaintiff checked the "Religion" box in her charge of discrimination that was submitted to the EEOC, she advanced no substantive allegations of religious discrimination in the charge. (*See* Brady Decl., Ex. 13.) Therefore, because Plaintiff has failed to exhaust this claim at the administrative level and has not alleged it in her complaint before this Court, the claim is not properly before the Court and will not be considered. *See Chen v. Citigroup Inv., Inc.,* No. 03 Civ. 6612 (GBD), 2004 WL 2848539, at *2 (S.D.N.Y. Dec. 9, 2004).

[4] The Second Circuit has noted that "direct evidence" in this sense would roughly equate to a "smoking gun" indicating that a plaintiff's firing was discriminatory, and that such evidence is typically unavailable in employment discrimination cases. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76 (2d Cir. 2001). The Court finds no such evidence in the record in the instant case.

[5] "The standards for liability under [the NYSHRL and NYCHRL] are the same as those under the equivalent federal antidiscrimination laws." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006).

4

case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for the position she held, (3) an adverse employment action, and (4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

If the plaintiff is able to establish a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (internal quotation marks omitted). At this step, however, a defendant "need not persuade the court that it was actually motivated by the proffered reason." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

If the defendant articulates a nondiscriminatory explanation for the action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine*, 450 U.S. at 253). To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff is required to produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted). In determining whether the articulated reason for the action is a pretext, "a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993).

Plaintiff's most concrete allegation of discrimination is that the Hospital refused to let her work a "flexible schedule" even though "[a]ll of the [other] seven nurse coordinators had flexible schedules base[d] on pre-employment agreement." (Pl. Reply at 4.) As the Second Circuit has noted, "[a] showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted). However, in order to demonstrate disparate treatment, a plaintiff must show that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (internal quotation marks omitted).

Here, Plaintiff has put forward no evidence from which the Court can conclude that she was treated differently from similarly-situated employees on the basis of her protected status. First, Plaintiff fails to provide the most basic information regarding the identities of the nurses who purportedly received more favorable treatment. It is only in her complaint that Plaintiff makes a passing reference to the other nurses being "young" and "white." (Compl. at 5.) However, even

5

if Plaintiff had established that she was treated differently than younger, white nurses, she has put forward no evidence to support a finding that she and the other nurses were similarly situated. Plaintiff fails to identify the other nurses' specific positions at the Hospital, their levels of seniority, or their job duties. *See Spiegler v. Isr. Disc. Bank of N.Y.*, No. 01 Civ. 6364 (WK), 2003 WL 21983018, at *2 (S.D.N.Y. Aug. 19, 2003) ("A court can properly grant summary judgment [on a discrimination claim] where no reasonable jury could find the similarly situated prong met." (citing *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001))). Indeed, Plaintiff does not even provide evidence that these nurses were in fact permitted to work on flexible schedules. As such, Defendant's failure to permit Plaintiff to work a flexible schedule does not give rise to an inference of discrimination.

Similarly, Plaintiff's moving papers are wholly bereft of any evidence that would lead a reasonable factfinder to conclude that her termination was motivated by discriminatory intent. Instead of articulating specific instances of discrimination, Plaintiff's memoranda of law merely recite conclusions regarding Defendant's "hatred and . . . discriminatory action and attitude." (Pl. Reply at 4.)

Nevertheless, even if Plaintiff had been able to establish a *prima facie* claim of discrimination relating to her termination, she would be unable to demonstrate that Defendant's proffered reason for her termination – namely, her chronic tardiness – was pretextual. Although Plaintiff testified at her deposition that she had a verbal agreement with Kelly pursuant to which she was permitted "to start basically between 9:00 and 9:30" (Brady Decl., Ex. 2 at 28:9-12, 30: 11-15), Plaintiff presents no evidence to corroborate this agreement. To the contrary, the undisputed evidence reveals that Plaintiff received numerous written warnings with respect to her tardiness. In one such warning, Plaintiff's supervisor made it clear that if Plaintiff's punctuality did not improve, then her employment would be affected. (Brady Decl., Ex. 10 at D020.) Because of Plaintiff's clearly documented problems with lateness, there is no basis for a reasonable factfinder to infer that Defendant's explanation for Plaintiff's dismissal was pretextual. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (internal quotation marks omitted)). Plaintiff has offered no evidence to suggest either that the assertions concerning her tardiness were false, or that discrimination on the basis of her race and/or age was the real reason for her firing.

Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's claims for employment discrimination.

### B. Disability Discrimination

Plaintiff also argues that she was discriminated against on the basis of her claustrophobia by being assigned to an office "without [access] to proper ventilation, lighting and with a very offensive smelling bathroom frequently visit[ed] by the other coordinator beside the plaintiff." (Pl. Reply at 10.) Plaintiff argues that she was placed in this office as part of a "malic[ious] attempt to force plaintiff to resign." (*Id.* at 10.)

The Court once again analyzes this claim under the *McDonnell Douglas* burden-shifting framework. *See Heyman v. Queens Vi.. Comm. for Mental Health*, 198 F.3d 68,

6

72 (2d Cir. 1999).  To establish a *prima facie* disability discrimination case under the ADA, a plaintiff must show (1) that her employer is subject to the ADA, (2) that she suffers from a disability within the meaning of the ADA, (3) that she was otherwise qualified to perform her job functions with or without reasonable accommodation, and (4) that she suffered an adverse employment action because of her disability.[6]  *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

As an initial matter, the Court cannot conclude from the evidence in the record that Plaintiff qualifies as an individual with a disability.  The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  While Plaintiff states that her claustrophobia causes her "illness, dizziness, nausea, headache, and malaise" (Reply at 9), Plaintiff has not put forward any credible, admissible evidence of the extent of these symptoms that would allow the Court to determine whether they are severe enough to substantially limit her ability to engage in a major life activity such as working.

Even if Plaintiff did qualify as an individual with a disability, her claim would nonetheless fail because she has not demonstrated that she suffered an adverse employment action.  As the Second Circuit has stated, an adverse employment action is a "'materially adverse change' in the terms and conditions of employment" that is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Galabya v. New York City Bd. of Ed.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).  "[A] plaintiff must show that the conduct complained of materially 'affected the terms, privileges, duration, or conditions of . . . employment.'"  *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481, 486 (S.D.N.Y. 2002) (quoting *Cooper v. New York State Dep't of Human Rights,* 986 F. Supp. 825, 828 (S.D.N.Y. 1997).

Plaintiff's assignment to a small, windowless office fails to rise to the level of an adverse employment action.  While Plaintiff may have been uncomfortable in her office, she has presented no credible evidence to demonstrate that such a placement had any material effect on the substance of her employment.  Indeed, Plaintiff's assertion that she was assigned to that office as part of Defendant's effort to provoke Plaintiff into resigning is undermined by her own acknowledgment that Defendant, in response to Plaintiff's requests, ultimately equipped the office with an air conditioner. (Ex. 1 at 8.)  Plaintiff's complaints, therefore, fail to demonstrate more than mere inconveniences that are not actionable under the relevant discrimination laws.  *See Montanile*, 211 F. Supp. 2d at 486 ("Mere changes in working conditions that cause some inconvenience do not constitute adverse employment actions as a matter of law.").

Finally, to the extent that Plaintiff's claim is construed as a claim for failure to accommodate her disability, such a claim

---

[6] "In this Circuit, a disability-based discrimination claim under the NYSHRL and NYCHRL involve the 'same elements' as an ADA claim."  *Jernigan v. Dalton Mgmt. Co.*, No 10 Civ. 94 (SAS), 2011 WL 3273514, at *3 (S.D.N.Y. July 29, 2011) (quoting *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010)).

7

also fails. To succeed on a claim for failure to accommodate, a plaintiff has the initial burden of proving that she is "(1) a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (internal quotation marks omitted).

As noted above, the Court is unable to conclude from the record that Plaintiff is an individual with a disability. While Plaintiff alleges that she began seeing a doctor to "deal with the symptoms of claustrophobia" (Pl.'s Reply at 10), Plaintiff has failed to demonstrate that her impairment was sufficiently severe to qualify her as disabled and therefore entitle her to accommodation. *See Ragin v. East Ramapo Cent. Sch. Dist.*, No. 05 Civ. 6496 (PDG), 2010 WL 1326779, at *20 (March 31, 2010) ("[S]imply because a plaintiff has submitted a doctor's note does not mean that the plaintiff is entitled to an accommodation.").

Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's claim for employment discrimination.

### C. Retaliation

In her complaint, Plaintiff also asserts a claim for retaliation. The Court analyzes this claim under the *McDonnel Douglas* burden-shifting framework. *See Kaytor v. Elec. Boat Co.*, 609 F.3d 537, 552 (2d Cir. 2010).

To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she was engaged in protected activity; (2) her employer was aware of the plaintiff's participation in protected activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer.[8] *See Kaytor*, 609 F.3d at 552.

While Plaintiff checked the "Retaliation" box on her complaint that was filed in this Court (*see* Compl. at 4), she has failed to articulate any substantive argument that Defendant has retaliated against her. Indeed, it is undisputed that Plaintiff never filed a written complaint of discrimination with the Hospital before the termination of her employment in January 2007. *See Woods v. N.M.C. Laboratories*, No. 93 Civ. 2908 (ERK), 1997 WL 1038873, at *2 (E.D.N.Y. July 14, 1997) ("The first, and most basic, element of a retaliatory discharge claim is that the activity for which the employee was discharged be Title VII-protected activity, not just any permissible activity.")

To the extent that Plaintiff attempts to base her retaliation claim on her requests to be relocated to a different office due to her purported claustrophobia, such a claim fails for the same reason that Plaintiff's age and race discrimination claims fail – namely, her

---

[8] The elements for retaliation claims under Title VII, ADEA, and the NYSHRL are the same. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir. 1996); *Coffey v. Cushman & Wakefield, Inc.*, No. 01 Civ. 9447 (JGK), 2002 WL 1610193, at *4 (July 22, 2002). The elements of retaliation under the NYCHRL differ only in "that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'" *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (quoting NYCHRL § 8–107(7)).

failure to demonstrate that Defendant's proffered reason for her termination was pretextual.

Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's retaliation claim.

### D. Hostile Work Environment

Plaintiff has also asserted a claim for hostile work environment.

To prevail on a claim for hostile work environment, Plaintiff must demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." [7] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); *see also DelaPaz v. N.Y. City Police Dep't*, No. 01 Civ. 5416 (CBM), 2003 WL 21878780, at *3 (S.D.N.Y. Aug. 30, 2003) ("[T]he Second Circuit erected a remarkably high hurdle with respect to the level and frequency of offensive conduct that must be present in order to sustain . . . a [hostile environment] claim.").

Here, Plaintiff fails to put forward evidence sufficient to meet this standard. While Plaintiff nakedly alleges that "Defendant/agent made many hostile comments in reference to the Moslem participation in the bombing of the [W]orld [T]rade [C]enter" during her employment (Reply at 7), Plaintiff fails to provide details or to specify how this resulted in an abusive working environment that was "permeated with discriminatory intimidation." Indeed, Plaintiff does not allege that any of the purportedly hostile remarks were directed at her or were intended to intimidate her. *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 280 (S.D.N.Y. 2007) (denying plaintiff's claim for hostile work environment where, among other things, the vast majority of the comments at issue were not directed at plaintiff individually).

Plaintiff also argues that she was subjected to a hostile work environment because "defendant intentionally refuse[d] to offer the plaintiff the opportunity to take the renal transplant certification from 2004-2007." (Reply at 8.) However, such ordinary management decisions plainly fail to establish a hostile work environment. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (affirming grant of summary judgment where "Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race").

Because Plaintiff has not put forward any evidence giving rise to the inference that any perceived mistreatment she endured was the result of discriminatory intent, her claim for hostile work environment must fail.

### IV. CONCLUSION

The federal, state, and local discrimination laws implicated in this case exist in order to ensure that individuals are not discriminated against based on their membership in a protected class, not merely to redress any action which a plaintiff perceives as being unfair. Here, although Plaintiff undoubtedly feels that she was

---

[7] Hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL are all analyzed using the same standard. *See Citroner v. Progressive Cas. Ins. Co.*, 208 F. Supp. 2d 328, 339 (E.D.N.Y. 2002) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)).

treated unfairly, she has advanced no evidence that any adverse action was undertaken because of her membership in a protected class.

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to terminate the motions located at Doc. Nos. 62 and 75 and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 30, 2011
      New York, New York

\* \* \*

Plaintiff Vera Crawford-Bey is proceeding *pro se*.

Defendant is represented by Barbara Gross, James Frank, and Kevin Brady of Epstein Becker & Green, P.C., 250 Park Avenue, New York, NY 10177.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-30-11

<u>A copy of this order was sent to</u>:
Vera Crawford-Bey
10 Cleveland Avenue
York, SC 29745